IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| BRANDON KIEFT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 7:22-cv-144 DC/RCG |
| | § | |
| PILOT WATER SOLUTIONS LLC *and* | § | |
| PWS EMPLOYEECO LLC, | § | |
| | § | |
| *Defendants.* | § | |

---

## AMENDED ANSWER AND COUNTERCLAIM

---

Defendants Pilot Water Solutions LLC and PWS EmployeeCo LLC file this Amended Answer and Counterclaim to Plaintiff's Original Petition and Application for Temporary Injunction ("Petition"):

### ANSWER

1.    Paragraph 1 is a legal conclusion to which no response is required.

2.    Defendants are without information sufficient to admit or deny Paragraph 2.

3.    In response to Paragraph 3, Defendants admit only that Pilot Water Solutions LLC is a limited liability company doing business in Texas. The remainder of Paragraph 3 is a legal conclusion to which no response is required. To the extent a response is required, denied.

4.    In response to Paragraph 4, Defendants admit only that PWS EmployeeCo LLC is a limited liability company doing business in Texas. The remainder of Paragraph 4 is a legal conclusion to which no response is required. To the extent a response is required, denied.

5.    Paragraph 5 is a legal conclusion to which no response is required. To the extent

a response is required, denied.

6.      Defendants deny the allegations in Paragraph 6.

7.      Paragraph 7 is a legal conclusion to which no response is required. To the extent a response is required, denied.

8.      In response to Paragraph 8, Defendants admit only that Kieft was employed by Pilot Water Solutions LLC, and that employment terminated around February 2022. The remainder of Paragraph 8 is a legal conclusion to which no response is required. To the extent a response is required, denied.

9.      Paragraph 9 is a legal conclusion to which no response is required. To the extent a response is required, denied.

10.     Paragraph 10 is a legal conclusion to which no response is required. To the extent a response is required, denied.

11.     In response to Paragraph 11, Defendants admit only that Kieft went to work for Commodore Midstream Partners in violation of his non-compete obligations to Defendants. Defendants deny the remaining allegations in Paragraph 11.

12.     In response to Paragraph 12, Defendants admit only that a representative of Defendants and counsel for defendants had a phone call with Kieft and his counsel regarding Kieft's unlawful competition and Kieft's desire to be released from his non-compete covenants. Defendants deny the remaining allegations in Paragraph 12.

13.     Defendants are without information sufficient to admit or deny the allegations of Paragraph 13.

14.     Paragraph 14 is a legal conclusion to which no response is required. To the extent a response is required, denied.

15.     Paragraph 15 is an incorporation by reference to which no response is required. To the extent a response is required, denied.

16.     Paragraph 16 is a legal conclusion to which no response is required. To the extent a response is required, denied.

17.     Paragraph 17 is a legal conclusion to which no response is required. To the extent a response is required, denied.

18.     Paragraph 18 is a request for relief to which no response is required. To the extent a response is required, denied.

19.     Paragraph 19 is an incorporation by reference to which no response is required. To the extent a response is required, denied.

20.     Defendants deny the allegations of Paragraph 20.

21.     Defendants deny the allegations of Paragraph 21.

22.     Defendants deny the allegations of Paragraph 22.

23.     Paragraph 23 is an incorporation by reference to which no response is required. To the extent a response is required, denied.

24.     Defendants deny the allegations of Paragraph 24.

25.     Defendants deny the allegations of Paragraph 25.

26.     Paragraph 26 is a request for relief to which no response is required. To the extent a response is required, denied.

27.     Paragraph 27 is a request for relief to which no response is required. To the extent a response is required, denied.

28.     Paragraph 28 is a jury demand to which no response is required. To the extent a response is required, Defendants reserve all rights.

## AFFIRMATIVE DEFENSES

1.  Subject to and without waiving the foregoing, Defendants assert the following separate defenses, all of which are pleaded in the alternative, some of which may be affirmative defenses on which Defendants will have the burden of proof, and others of which may relate to the elements of Kieft's causes of action. By pleading these defenses, Defendants do not assume the burden of proof on any defenses for which it would not otherwise have the burden of proof under law.

2.  Kieft has failed to state a claim for which relief may be granted and his claims should be dismissed under Rule 12(b)(6).

3.  Kieft's tortious interference claim is barred by justification and legal privilege.

4.  Kieft's claims are barred in whole or in part by the doctrine of unclean hands.

5.  Kieft's claims are barred in whole or in part because he failed to mitigate his alleged damages, if any.

6.  Kieft's claims are barred by his prior material breach of the non-compete covenants that he agreed to.

7.  Kieft's contractual claims are barred in whole or in part for failure of consideration.

8.  Kieft's claims are barred in whole or in part by the doctrines of equitable estoppel, promissory estoppel, and quasi-estoppel.

9.  Kieft's claims are barred in whole or in part by the doctrine of waiver.

10. The facts of this case have not been fully developed, so Defendants reserve the right to amend or supplement this Answer as appropriate and in accordance with the Federal Rules of Civil Procedure.

## PRAYER

Wherefore, Defendants request that Plaintiff take nothing by this suit, that Defendants recover their costs and attorney's fees, and for such other and further relief to which Defendants may be justly entitled.

## COUNTERCLAIM

### SUMMARY

Pilot Water Solutions LLC ("Pilot") files this lawsuit to recover the $93,599.91 in severance that it paid to Kieft upon termination of Kieft's employment. Kieft expressly agreed that he would forfeit the entire severance in certain circumstances, including breaching any of his non-compete obligations. Around the time of his termination from Pilot, Kieft started a competing role at Commodore Midstream Partners, LLC ("Commodore"). Pilot and Commodore directly compete in the same water solutions market in the Permian Basin. Kieft directly solicited at least one Pilot customer on behalf of Commodore. As a result of Kieft's violations, Pilot is entitled to forfeiture and return of the entire severance Pilot paid to Kieft.

### PARTIES

1.      Pilot Water Solutions LLC ("Pilot") is a Delaware limited liability company with offices in Midland County, TX and Houston, TX.

2.      Kieft is a resident of Texas. He may be served with process at 1411 Harvest Rain, Midland, TX 79705, or wherever he may be found.

### JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Kieft because he lives in Texas, does business in Texas, and this lawsuit arises from Kieft's conduct in Texas. This Court has subject matter jurisdiction because Pilot and Kieft are completely diverse, and the amount in controversy exceeds the minimum amount for diversity jurisdiction. The Court also has subject matter jurisdiction over this counterclaim because it is related to Plaintiff's claim, already pending in this Court.

4.      Venue is proper in Harris County because a substantial part of the events giving rise to the claims occurred here.

## FACTUAL BACKGROUND

**A.      Pilot operates in a competitive market and depends on its customer relationships and confidential business information.**

5.      Pilot is a leading water solutions provider in the energy industry. It provides a range of sophisticated water solutions in the Permian Basin, including gathering, recycling, sourcing, and disposing.

6.      Pilot's success is built on, among other things, favorable and confidential pricing and margins, proprietary business plans, and customer relationships. The competition is fierce, with Pilot and Commodore (and others) going head-to-head for the same customers and contracts. Employee know-how and customer relationships are key, which is why Pilot hired Kieft in reliance on his promise not to compete directly against Pilot for 12 months after his termination.

**B.      The non-compete promises.**

7.      Pilot hired Kieft into a Vice President of Business Development position in June 2019. In this position, Kieft was responsible for managing important Pilot customer accounts. This role also required Kieft to access Pilot's confidential and trade secret information, including its pricing, margin, technology secrets, customer information, strategies, and other sensitive commercial information.

8.      Kieft signed an Employee Confidentiality, Non-Competition and Non-Solicitation Agreement ("the Non-Compete Agreement"), a copy of which is attached as **Exhibit 1**.

9.      The Non-Compete Agreement states that Pilot will provide Kieft with access to its trade secrets, which enabled Kieft to perform his job duties for Pilot. (Ex. 1 § 1.)

10.      Kieft agreed to a reasonable non-competition covenant:

> [Kieft] covenants and agrees that [for one year after termination, he] will not directly or indirectly engage with any activity that is competitive with the business of [Pilot] . . . . [Kieft and Pilot] acknowledge and agree that the business of [Pilot] . . . shall include, without limitation, trucking of any commodities or other materials by tanker trucks and trailers . . . .

(Ex. 1 § 3.)

11.    Kieft's employment with Pilot terminated around February 2022. In connection with this termination, Kieft and Pilot entered a General Release. A copy of the General Release is attached as **Exhibit 2**. In the General Release, Kieft again promised not to compete directly against Pilot for a one-year period:

> I hereby agree not to compete with [Pilot] . . . from the date of this Agreement for twelve (12) months.

(Ex. 2 pp. 4-5.)

12.    In the General Release, Kieft expressly agreed that he is uniquely situated by reason of his Pilot employment to have a competitive advantage against Pilot. (*Id.*)

## C.    Pilot paid Kieft $93,599.91 in severance, and Kieft agreed to forfeit and return it in the event he were to compete against Pilot.

13.    Pilot entered the General Release relying on Kieft's renewed promise not to compete for 12 months, and agreed to pay Kieft a substantial severance payment conditioned upon Kieft complying with his non-compete and confidentiality covenants. (Ex. 2 pp. 4-5.) Kieft accepted the benefits of the Non-Compete Agreement and General Release (collectively, the "Agreements"), and enjoyed access to Pilot's confidential and trade secret information and customer and employee relationships. Kieft agreed that the non-compete covenant is necessary to protect Pilot from unfair competition and disclosure of Pilot's confidential information. (Ex. 2 p. 5.)

14.    The General Release provides that "any violation of this Agreement . . . will entitle [Pilot] to . . . recover from [Kieft] the full value of any severance payments already made under this Agreement." In other words, Kieft agreed that his severance would be forfeited should he violate the General Release, including his non-compete obligations.

**D.    Kieft's non-compete provisions in both contracts are enforceable.**

15.    Under Texas law, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee."[1]

16.    Kieft's covenants are "ancillary to or part of an otherwise enforceable agreement" because: (1) he entered them as part of the Agreements, which are enforceable contracts[2]; and (2) Pilot provided Kieft access to its confidential and trade secret information.

17.    "The 'otherwise enforceable agreement' requirement is satisfied when the covenant is 'part of an agreement that contained mutual non-illusory promises.'"[3] Pilot's promise to provide confidential and proprietary information, and subsequent provision of that information, in exchange for Kieft's agreement not to disclose that information, constitutes an otherwise enforceable agreement as a matter of law.[4] Moreover, there is a "nexus" between the two because the point of having non-compete and non-solicit covenants is to prevent Kieft from exploiting Pilot's trade secrets for a competitor.[5] "Consideration for a noncompete that is reasonably related

---

[1] Tex. Bus. & Com. Code Ann. § 15.50(a).
[2] Exs. 1 and 2.
[3] *Marsh*, 354 S.W.3d at 773.
[4] *See* Ex. 1.
[5] *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011).

to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus."[6]

18.    Texas courts routinely hold that restrictions like those in the Agreements are reasonable. "In order to be reasonable, the restrictive covenant 'must bear some relation to the activities of the employee.'"[7]  "A covenant is unreasonable if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted."[8]

19.    The non-compete covenants have reasonable limitations as to time, geographical area, and scope of activity.

20.    <u>Time:</u> The restrictions are limited to 12 months following Kieft's termination from Pilot. This is reasonable, as two to five years has repeatedly been held a reasonable time limitation in a noncompetition agreement.[9] In this case, 12 months is particularly reasonable given the competitive nature of Pilot's business and Kieft's access to Pilot's confidential information.

21.    <u>Geographic scope</u>: Pilot seeks a geographic scope only including the Permian Basin. (See proposed Temporary Restraining Order, filed concurrently.) Kieft's role with Pilot included the Permian Basin. The Permian Basin is where Kieft and Commodore stand to unlawfully compete against Pilot. As such, this geographical scope is reasonable. Kieft can directly

---

[6] *Id.*
[7] *Republic Services, Inc. v. Rodriguez*, 2014 WL 2936172, *6 (Tex. App.—Houston [14th Dist.] June 26, 2014, no. pet. h.).
[8] *Id.*
[9] *Gallagher Healthcare Ins. Services v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement.") (citing cases); *Brink's Inc. v. Patrick*, 2014 WL 2931824, *5 (N.D. Tex. June 27, 2014) ("Texas courts have generally upheld non-compete periods ranging from two to five years as reasonable.") (citing cases); *AMF Tuboscope v. McBryde*, 618 S.W. 2d 105, 108 (Tex.App.—Corpus Christi 1981).

engage in distributing water solutions to oil and gas customers in all other locations in North America.

22.    This is consistent with Texas law, which holds that geographic restrictions are reasonable to the extent they are commensurate with the territory in which the employee worked.[10] And "[c]ovenants with wide geographic areas have been upheld frequently in Texas courts, especially when the area covered constitutes the employee's actual sales or work territory."[11] This may include nationwide, continentwide, or worldwide restrictions.[12]

23.    <u>Scope of activity</u>: the non-compete covenant is limited to the requirements not to "compete" or be "competitive" against Pilot, and Pilot's proposed Temporary Restraining Order is reasonably tailored. This means that Kieft is only prohibited from participating in the sale or marketing of water solutions to oil and gas customers in the Permian Basin. This scope directly arises from the type of work Kieft performed for Pilot. Moreover, this is a narrow scope of activity, and Kieft can immediately do other work outside this scope, in the oil and gas industry and other industries.

24.    Kieft also agreed that these restrictions are reasonable and necessary to protect Pilot's legitimate business interests.[13]

---

[10] *Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 793 (Tex.App.—Houston [1st Dist.] 2001, no pet.).

[11] *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 798 (S.D. Tex. 2010) (holding that a non-compete applying "in any geographic area where Employer does business or is authorized to do business," which included practically all of the Western hemisphere, was reasonable and enforceable because the employee's "actual territory did span the Americans.").

[12] *See, e.g., Berotti v. C.E. Shephard Co., Inc.*, 752 S.W. 2D 648, 654 (Tex. App.—Houston (14th Dist.) 1988).

[13] Ex. 2 pp. 4-5.

25.    In any event, because Pilot seeks forfeiture of severance under the General Release,
Kieft's non-compete obligations are not subject to any reasonableness standard under Texas law.
*See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319 (Tex. 2014).

**E.    Kieft breached the non-compete provisions by soliciting Pilot customers.**

26.    Kieft's employment with Pilot terminated in February 2022. Around the same time,
Kieft started a similar role with Commodore, competing directly against Pilot in the Permian
Basin. Kieft's position with Commodore was "Director of Commercial Development," a position
that would include soliciting customers and business in competition against Pilot.

27.    Pilot is investigating the actions Kieft took while employed at Commodore. To
date, Pilot has learned that Kieft solicited at least one of Pilot's customers on April 7, 2022.

28.    Commodore is a direct competitor to Pilot, as both companies provide water
solutions for oil and gas customers in the Permian Basin.

29.    Kieft was a recent insider of Pilot, privy to Pilot's commercial secrets and sales
playbook. In other words, Kieft had a unique position to undercut Pilot's pricing and exploit his
insider knowledge for the benefit of himself and Commodore. Kieft's employment with
Commodore violates his non-compete obligations because he had a directly competing role and
sought to steal the same customers that Pilot trusted Kieft to oversee, and take that business over
to Commodore.

## CAUSES OF ACTION

### Count I: Breach of Contract

30.    Plaintiff incorporates all prior paragraphs.

31.    The Agreements are valid and enforceable, and Pilot performed its obligations
thereunder.

32.    Kieft breached the Agreements, and continues to violate the Agreements, by competing directly against Pilot in the Permian Basin.

33.    Kieft's actions have damaged Pilot.

34.    Pilot seeks to recover the entire severance it paid to Kieft pursuant to the General Release, and is entitled to this forfeiture under the terms of the General Release.

35.    Pilot seeks recovery of its attorneys' fees as provided by the Agreements and Chapter 38 of the Texas Civil Practices and Remedies Code.

## JURY DEMAND

36.    Pilot demands a jury on all issues so triable.

## PRAYER

For these reasons, Plaintiff respectfully requests the Court to award it:

a.    Return of the $93,599.91 severance that Pilot paid Kieft;
b.    Actual damages in the amount Pilot has lost and will lose based on Kieft's unlawful solicitation;
c.    Pre- and post-judgment interest;
d.    Reasonable attorneys' fees, expenses, and court costs; and
e.    All such other relief to which Plaintiff is entitled in equity or law.

Dated: January 31, 2023

Respectfully submitted,

AHMAD, ZAVITSANOS & MENSING, PLLC

/s/ Joseph Y. Ahmad
Joseph Y. Ahmad
Texas Bar No. 00941100
joeahmad@azalaw.com
Shawn M. Bates
Texas Bar No. 24027287
sbates@azalaw.com
DJ Ringquist
Texas Bar No. 24110280
dringquist@azalaw.com
1221 McKinney Street, Suite 2500
Houston, Texas 77010

13

T: 713-655-1101
F: 713-655-0062


Robert P. Crumpler, Jr., State Bar No. 00793569
rpcrumpler@dgclaw.com
Katherine L. Petroski; State Bar No. 24088218
klpetroski@dgclaw.com
**DAVIS, GERALD & CREMER**
**A PROFESSIONAL CORPORATION**
400 W. Illinois, Suit. 1400
Midland, Texas 79701
T: 432-687-0011
F: 432-687-1735


**ATTORNEYS FOR DEFENDANTS**
**PILOT WATER SOLUTIONS LLC AND**
**PWS EMPLOYEECO LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2023, a true and correct copy of the above and foregoing document was sent by electronic mail to all counsel of record as follows:

Jason Hamm
Rick G. Strange
Hamm Law Group, PLLC
3000 N. Garfield, Suite 205
Midland, Texas 79705

*/s/ DJ Ringquist*
DJ Ringquist