## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

**BRANDON KIEFT,**
    *Plaintiff,*

**v.**

**PILOT WATER SOLUTIONS LLC,**
**PWS EMPLOYEECO LLC,**
    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§

**MO:22-CV-00144-DC**

## ORDER

This case revolves around noncompetition agreements—that are no longer in effect—and the two main claims spawned from them. The first claim comes from Plaintiff Brandon Kieft, who alleges Defendant Pilot Water Solutions LLC tortiously interfered with his subsequent employment for another company. The second claim is Defendant's breach of contract counterclaim for Plaintiff's alleged breach of the noncompetition agreements.

## BACKGROUND

When Plaintiff started working for Defendant in May 2019,[1] he signed an agreement which included noncompetition provisions ("2019 Noncompetition Agreement"). The 2019 Noncompetition Agreement lists the noncompetition period as "the one year period from the date that [Plaintiff] ceases to be employed by [Defendant]." Plaintiff remained employed with Defendant until the company terminated his employment on February 21, 2022.

As part of his termination, Plaintiff signed a general release of claims in exchange for $93,599.91 in severance ("General Release"). Along with language common to a release of claims, the General Release also contained a noncompetition provision ("Noncompetition

---

[1] Plaintiff started his employment with Defendant's predecessor in interest, PDPS LLC.

Provision"), where Plaintiff agreed not to be employed by any of Defendant's competitors "from the date of [the General Release] for twelve (12) months." Plaintiff signed the General Release on February 22, 2022. So in sum, the 2019 Noncompetition Agreement and the General Release's Noncompetition Provision (together, "Noncompetition Agreements") prohibited Plaintiff from working for Defendant's competitors in a specified geographic area from February 21, 2022 to February 22, 2023.

Around April 5, 2022, Plaintiff began working for Commodore Midstream Partners, a company that Defendant contends is a competitor. Three days after Plaintiff started work for Commodore, Defendant sent Commodore a cease-and-desist letter, informing Commodore that Plaintiff was breaching his noncompetition agreements. Three days after that, and in response to Defendant's letter, Commodore terminated Plaintiff's employment.

Plaintiff sued Defendant in state court around a month later, alleging three causes of action. First, Plaintiff sought a declaratory judgment that the Noncompetition Agreements' language was unenforceable or too broad. Second, Plaintiff claimed Defendant tortiously interfered with his employment with Commodore. Lastly, Plaintiff asked for Defendant to be temporarily enjoined from threatening to sue Commodore or contending Plaintiff violated his Noncompetition Agreements. Defendant then removed the case to this Court in June 2022.

In July 2022, Plaintiff moved to withdraw his application for a temporary injunction. And in February 2023, Defendant amended its answer to add a counterclaim for the $93,599.91 in severance paid to Plaintiff because he violated the Non-Compete Agreements. In April 2023, the Parties cross-moved for summary judgment.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[2] Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] Substantive law identifies which facts are material.[4] The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."[5]

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that establish the absence of a genuine issue of material fact.[6] While the movant bears the burden of proof, it may discharge the burden by showing that no evidence supports the nonmovant's case.[7] Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."[8] A nonmovant must present affirmative evidence to defeat a properly supported motion for summary

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[3] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

[6] Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.

[7] *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

[8] *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

judgment.[9] Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment.[10] The Court must consider all the evidence but "refrain from making any credibility determinations or weighing the evidence."[11]

## DISCUSSION

I.    **Plaintiff's motion for partial summary judgment.**

The Court starts with Plaintiff's Motion for Partial Summary Judgment, in which Plaintiff asks the Court to hold that "the non-compete provision in a release he was required to sign when terminated is unenforceable as a matter of law."[12] Plaintiff pleaded this issue under his claim for declaratory judgment.[13] But that creates a problem. Plaintiff's claims for declaratory judgment may be moot—an issue the Court may raise sua sponte.[14]

If a declaratory judgment action is filed in state court, but later removed to federal court, the action converts to one brought under the federal Declaratory Judgment Act.[15] To establish that an Article III case or controversy exists when seeking declaratory relief, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will

---

[9] *Anderson*, 477 U.S. at 257.
[10] *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).
[11] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).
[12] Doc. 38 at 1.
[13] Doc. 1, Ex. 1 at
[14] *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329 (5th Cir. 2002) (Benavides, J., concurring) ("Of course, the jurisdictional issue of standing may be raised *sua sponte* despite the parties' failure to raise it.").
[15] *Yor-Wic Constr. Co., Inc. v. Eng'g Design Techs., Inc.*, 329 F. Supp. 3d 320 (W.D. La. 2018).

suffer injury in the future."[16] In other words, "[b]ased on the facts alleged, there must be a substantial and continuing controversy between two adverse parties."[17]

Here, no present controversy exists for Plaintiff's declaratory judgment claim on either of the Noncompetition Agreements' enforceability because both agreements expired in February 2023. And with no current, live controversy, the Court lacks jurisdiction over that claim.[18] What's more, the same analysis would apply to Plaintiff's claim for temporary injunctive relief. In any event, Plaintiff withdrew his application for a temporary injunction almost a year ago.[19] Thus, Plaintiff's claim for declaratory judgment that the Noncompetition Agreements are unenforceable and his claim for injunctive relief should be dismissed as moot.

Plaintiff's sole remaining claim then, is his tortious interference claim. But Plaintiff did not plead or raise in his partial summary judgment motion the Noncompetition Agreements' unenforceability in the context of his tortious interference claim. Nor does Plaintiff's Motion argue the enforceability issue in response to Defendant's breach of contract counterclaim. Indeed, arguing Defendant's counterclaim fails because the Noncompetition Agreements are unenforceable is a different argument than simply asking

---

[16] *Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003).

[17] *Id.*

[18] *See Carr v. Saucier*, 582 F.2d 14, 16 (5th Cir. 1978) ("if the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction.").

[19] Doc. 12.

the Court to declare the Noncompetition Agreements unenforceable.[20] As a result, Plaintiff's

motion for partial summary judgment should be denied.

## II.   Defendant's motion for summary judgment

Defendant also moves for summary judgment, arguing Plaintiff's tortious interference

claim fails as a matter of law. "Texas law recognizes two types of tortious-interference

claims: one based on interference with an existing contract and one based on interference

with a prospective business relationship."[21] Although his Complaint is unclear about which

of the two types of interference claims he is pursuing, Plaintiff's Response affirms his claim

centers on interference with an existing contract.[22] To establish a claim for tortious

interference with a contract, Plaintiff must establish:

> (1)  the existence of a valid contract subject to interference;
>
> (2)  that Defendant willfully and intentionally interfered with the contract;
>
> (3)  that the interference proximately caused Plaintiff's injury; and
>
> (4)  that Plaintiff incurred actual damage or loss.[23]

Yet the first element—the existence of a valid contract—presents the biggest hurdle

for Plaintiff's claim. Plaintiff seeks to overcome that hurdle by citing various cases, including

*Knox v. Taylor*, a Houston appeals court opinion that states, "it is no defense to an action for

---

[20]  For example, if Plaintiff had argued against Defendant's counterclaim, and the Court did find the Noncompetition Agreements were unreasonable, the Court would need to reform the agreements. And if that were the case, Texas law would bar the Court from awarding Defendant money damages for any breach before the reformation. *See* Tex. Bus. & Com. Code Ann. § 15.51(c) (". . . the court may not award the promisee damages for a breach of the covenant before its reformation . . ."). But Plaintiff did not make that argument, so the Court need not analyze those issues.

[21]  *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017).

[22]  Doc. 42 at 3.

[23]  *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

tortious interference that a contract is terminable at will."[24] But while that statement from *Knox* may be true, Plaintiff overlooks a key difference between this case and *Knox*—the *Knox* court was analyzing a specific employment contract.[25]

Indeed, neither *Knox*—nor the Texas Supreme Court's decision in *Sterner v. Marathon Oil Co.*—supports the idea that an at-will employee may recover under tortious interference with contract claim *when there is no contract*.[26] To the contrary, various Texas courts have recognized that *Sterner* and *Knox* "stand for the proposition that a party can maintain a tortious interference with contract claim *even if the contract in question is terminable at will*."[27] "In other words, Texas simply recognizes that even though a contract can be terminated at any time, third parties may not tortiously interfere with it while it is in existence."[28] That's not the case here. Plaintiff testified he did not have an employment contract with Commodore.[29] And without an existing contract for Defendant to interfere with, Plaintiff's tortious interference claim fails on the first element.[30] Thus, Defendant's summary judgment on this claim should be granted.

---

[24] Doc. 42 at 3.

[25] *Randall v. L-3 Comm'ns Corp.*, No. 3:16-CV-3000-G, 2017 WL 412416, *3 (N.D. Tex. Jan. 31, 2017) (noting that the *Knox* court was analyzing the "Titan/SMGA" contract).

[26] 767 S.W.2d 686 (Tex. 1989).

[27] *See, e.g.*, *Odem v. Deloitte & Touche, LLP*, No. 04-09-00747-CV, 2011 WL 381721, *7 (Tex. App.—San Antonio Feb. 2, 2011, pet. denied) (emphasis added).

[28] *Id.*

[29] Doc. 37, Ex. 5 at 62:14–18, 130:25–131:9.

[30] *See Odem*, 2011 WL 381721, at *7 ("It is undisputed that Odem did not have a contract with SAWS, not even a terminable-at-will contract so as to render *Sterner* and its progeny applicable.").

7

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Partial Summary Judgment be **DENIED**. (Doc. 38).

It is also **ORDERED** that Defendant's Motion for Summary Judgment be **GRANTED**. (Doc. 37).

It is also **ORDERED** that Plaintiff's claims for declaratory judgment and injunctive relief be **DISMISSED** without prejudice as **MOOT**.

It is so **ORDERED**.

SIGNED this 5th day of June, 2023.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE